IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QUANTUM FOODS, LLC, a Delaware limited liability company, ) ) ) Plaintiff, ) ) v. ) ) PROGRESSIVE FOODS, INC., a Florida corporation d/b/a Quantum Home Delivery, ) ) ) Defendant. ) _____) ) PROGRESSIVE FOODS, INC., a Florida ) corporation d/b/a Quantum Home Delivery, ) ) Counter-Plaintiff, ) ) v. ) ) QUANTUM FOODS, LLC, a Delaware limited liability company, ) ) ) Counter-Defendant. ) | Case No. 12 C 1329 |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On February 24, 2012, Plaintiff Quantum Foods, LLC ("Quantum") filed a one-count breach of contract Complaint against Defendant Progressive Foods, Inc. ("Progressive") based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. On May 14, 2012, Progressive filed its Answer, Affirmative Defenses, and Counterclaims alleging tortious inference with prospective economic advantage, common law fraud, and, in the alternative, unjust enrichment. On July 16, 2012, Quantum filed a motion to dismiss Progressive's Counterclaims in tandem with a motion to strike Progressive's Affirmative Defense. For the following reasons, the Court

denies Quantum's motion to dismiss, but grants Quantum's motion to strike Progressive's request for attorney's fees. The Court will address Quantum's motion to strike Progressive's Affirmative Defense in the context of Progressive's motion for leave to file a First Amended Answer, Affirmative Defense, and Counterclaims.[1]

## BACKGROUND

In its Complaint, Quantum alleges that it provides high-quality beef, pork and poultry products to leading restaurant chains, as well as to military and school food service channels. (R. 1, Compl. ¶ 5.) Quantum also partners with retailers on private label food products, prepared meals, and deli items. (*Id.*) Progressive is a meat broker that purchases and resells meat products from Quantum to Progressive's customers, namely, food distributors throughout the United States. (*Id.* ¶ 6.) Quantum alleges that from July 2010 through August 2010, Progressive placed numerous orders with Quantum in Illinois for meat products to be resold to Progressive's customers. (*Id.* ¶ 7.) Further, Quantum maintains that from July 2010 through August 2010, it filled Progressive's orders and shipped all meat products to the locations directed by Progressive from Quantum's warehouse in Bolingbrook, Illinois. (*Id.* ¶ 9.) Upon shipment of each order, Quantum provided invoices to Progressive for payment upon receipt. (*Id.* ¶ 10.) Quantum contends that it has demanded payment for the balance of all outstanding amounts owed by Progressive, yet Progressive has breached its agreement with Quantum by failing to pay for the products it ordered. (*Id.* ¶¶ 11, 12.) Further, Quantum asserts that Progressive's outstanding balance for products purchased from Quantum is $158,922.96. (*Id.* ¶ 13.)

---

[1] In its motion for leave to amend, Progressive seeks to amend its affirmative defense, its answer relating to Quantum's allegations in paragraph 12 of the Complaint, and to correct a mistake with numbering and a handful of typographical errors. (R. 30, Mot. Leave Am., at 1-2.)

**LEGAL STANDARDS**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

Rule 9(b) governs whether a fraud claim has been alleged with sufficient particularity under the federal standards. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 446 (7th Cir. 2011). Specifically, Rule 9(b) requires a pleading to state with particularity the circumstances constituting the alleged fraud. *See* Fed.R.Civ.P. 9(b); *Pirelli,* 631 F.3d at 441-42. This "ordinarily requires describing the 'who, what, when, where, and how" of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank,* 649 F.3d at 615 (citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

3

*McCauley v. City of Chicago,* 671 F.3d 611, 622 (7th Cir. 2011). "In this context, 'generally' means as a conclusion, without specifying underlying facts that would support the inference." *Id.* at 622-23.

## I. Tortious Interference with Prospective Economic Advantage

Quantum first challenges the sufficiency of Progressive's tortious interference with business expectancy counterclaim, also known as tortious interference with prospective economic advantage. Under Illinois law,[2] "to prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva,* 142 Ill.2d 495, 511–12, 154 Ill.Dec. 649, 568 N.E.2d 870 (Ill. 1991); *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd., USA,* 384 Ill.App.3d 849, 862, 323 Ill.Dec. 507, 893 N.E.2d 981 (1st Dist. 2008) ("This tort recognizes that a person's business relationships constitute a property interest and, as such, are entitled to protection from unjustified tampering by another.").

In its Counterclaim, Progressive alleges that it has had a 15-year history of developing a market for Quantum's meat products by securing new clients and developing business for Quantum's home delivery business. (Countercl. ¶¶ 13-14.) Progressive further asserts that Quantum was aware of Progressive's client lists and that Quantum directly contacted Progressive's clients. (*Id.* ¶ 65.) In addition, Progressive maintains that Quantum – by and through its agents – intentionally interfered with Progressive's relationship with its clients by

---

[2] The parties do not dispute that Illinois law governs their claims.

making knowingly false statements regarding Progressive's business practices, including that Progressive was misrepresenting its pricing structure. (*Id*. ¶¶ 62, 64, 66-68.) Further, Progressive alleges that as a result of Quantum's accusations that Progressive misrepresented its pricing structure and practiced business in a deceptive manner, several of Progressive's customers ceased doing business with Progressive and transferred their accounts to Quantum. (*Id*. ¶ 73.) Based on these allegations and the federal notice pleading standards, Progressive's allegations raise a right to relief above a speculative level because these facts, taken as true, "raise a reasonable expectation that discovery will reveal evidence" supporting its tortious interference claims. *See Twombly,* 550 U.S. at 556.

Nevertheless, Quantum argues that Progressive has not sufficiently alleged that it has a reasonable expectation of entering into a future business relationship with its present or former clients, and thus Progressive cannot withstand the present motion to dismiss. *See Business Sys. Eng'g, Inc. v. International Bus. Mach. Corp.,* 520 F.Supp.2d 1012, 1022 (N.D. Ill. 2007) ("'reasonable expectation' requires more than the hope or opportunity of a future business relationship."); *MPC Containment Sys., Ltd. v. Moreland,* No. 05 C 6973, 2008 WL 2875007, at *15 (N.D. Ill. July 23, 2008) ("To demonstrate a reasonable business expectancy, a plaintiff need not prove that a contractual relationship existed with a third party, but it must show 'more than a mere hope' of future business dealings'") (citation omitted). Progressive, however, has not only alleged that it has client lists and a "track record" with its customers, but that certain customers were interested in staying with Progressive. (Countercl. ¶ 59.) These allegations are sufficient to withstand Quantum's Rule 12(b)(6) motion to dismiss. *See, e.g., Energy Servs. Air Conditioning & Heating Co., Inc.,* No. 97 C 0373, 1997 WL 790725, at *12 (N.D. Ill. Dec. 22, 1997).

Next, Quantum argues that its conduct falls within the scope of the business competition privilege, and thus Progressive's tortious interference claim must fail. *See Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.,* 227 Ill.2d 381, 392, 317 Ill.Dec. 855, 882 N.E.2d 1011 (Ill. 2008) ("Under Illinois law, commercial competitors are privileged to interfere with one another's prospective business relationships provided their intent is, at least in part, to further their businesses and is not solely motivated by spite or ill will."). "The privilege to compete does not, however, encompass the use of improper competitive strategies that employ fraud, deceit, intimidation, or deliberate disparagement." *Id.*; *see also Cromeens, Holloman, Sibert, Inc v. AB Volvo,* 349 F.3d 376, 399 (7th Cir. 2003) ("A defendant is entitled to the protection of the privilege of competition provided that the defendant has not employed a wrongful means or is not motivated solely by malice or ill will."). Here, Progressive has sufficiently alleged that Quantum's agents made knowingly false statements about Progressive's pricing and business practices and that Quantum's conduct was fraudulent. (Countercl. ¶¶ 79-82.) Therefore, Progressive has alleged sufficient facts to overcome Quantum's affirmative defense at this procedural posture, especially in light of the fact that plaintiffs are not required to allege facts to anticipate and defeat affirmative defenses in the first instance. *See Independent Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir. 2012); *see also General Motors Corp. v. State Motor Vehicle Review Bd.,* 224 Ill.2d 1, 15, 308 Ill.Dec. 611, 862 N.E.2d 209 (Ill. 2007) ("competitor's privilege ... is an affirmative defense to the tort of intentional interference with prospective business advantage").

The remainder of Quantum's arguments to dismiss Progressive's tortious interference claim are based on factual disputes that are best left for summary judgment. *See Jones v. Clark,* 630 F.3d 677, 680 (7th Cir. 2011). As the Seventh Circuit explained over 25 years ago, "the

defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations. The attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir. 1987). This holds true after the Supreme Court's decisions in *Twombly* and *Iqbal*. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."); *Virnich v. Vorwald,* 664 F.3d 206, 212 (7th Cir. 2011) ("In reviewing a plaintiff's claim, the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor."). The Court therefore denies Quantum's motion to dismiss Progressive's tortious interference with prospective economic advantage claim.[3]

## II.     Fraudulent Inducement/Misrepresentation

In its Counterclaim, Progressive also brings a fraudulent inducement/misrepresentation claim against Quantum. To state a fraudulent inducement claim under Illinois law, a plaintiff must allege: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hoseman v. Weinschneider,* 322 F.3d 468, 476 (7th Cir. 2003) (citation omitted); *see*

---

[3] The Court did not address the parties' arguments made in footnotes or made for the first time in their reply briefs. *See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 571 (7th Cir. 2012) ("arguments raised for the first time in a reply brief are waived"); *Long v. Teachers' Retirement Sys. of Ill.,* 585 F.3d 344, 349 (7th Cir. 2009) (cursory arguments made in footnotes are waived). "The underlying concern is to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument." *Hernandez v. Cook County Sheriff's Office,* 634 F.3d 906, 913 (7th Cir. 2011).

7

*also Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 569 (7th Cir. 2012).

Specifically, Progressive alleges that Quantum, by and through its agents, acted in a fraudulent and deceptive manner over the course of 2009 and 2010 when Quantum attempted to escape the terms of its 1994 oral agreement with Progressive regarding the division of profits from the parties' home delivery business. (Countercl. ¶ 1.) In particular, Progressive alleges that the two companies entered into a business relationship in 1994, whereby Progressive was the exclusive broker of Quantum products in the home delivery market in exchange for Quantum forwarding all leads to Progressive for client development. (*Id*. ¶¶ 7, 8.) Progressive further alleges that its efforts at securing new clients and developing business resulted in an overall increase in Quantum's home delivery business to the point where the parties were shipping over twelve thousand cases per week. (*Id*. ¶ 13.)

Progressive asserts that in approximately 2006, a newly hired Quantum Executive Vice President, Rick Garcia, learned how much Progressive collected in commissions each month and sought to have the nature of the parties' business relationship altered so that a greater portion of profits would be retained by Quantum. (*Id*. ¶ 18.) To that end, starting in 2007, Quantum began to directly do business with Progressive's largest home delivery client, Direct USA. (*Id*. ¶ 19.) Progressive asserts that Quantum's decision to work directly with Direct USA was motivated by its interest in retaining the portions of its profit margin which previously had gone to Progressive. (*Id*. ¶ 20.) Meanwhile, in January 2009, Quantum stopped forwarding non-cold storage leads to Progressive and began quoting and selling directly to new clients despite repeated claims by its agents that it was continuing to honor Progressive's and Quantum's established business relationship. (*Id.* ¶¶ 24, 28.) Progressive also contends that at the time Quantum's agents made these statements, they knew those statements were false and that

Quantum was no longer forwarding leads to Progressive in accordance with the 1994 Agreement. (*Id.* ¶ 29.) In addition, Progressive alleges that Quantum – through its agents – made knowingly material false statements regarding Quantum's pricing structure to coerce Progressive to cease its business relationship to Quantum. (*Id*. ¶¶ 43-45, 56.)

Furthermore, Progressive alleges that Quantum made these material false statements as part of its scheme to keep Progressive at ease and to continue its develop their business pursuant to the 1994 oral agreement while Quantum attempted to take Progressive's clients during the summer of 2010. (*Id*. ¶ 30.) Progressive further states that it relied upon Quantum's false representations to its detriment and continued to cultivate the home delivery business for both Quantum's and Progressive's benefit without knowing that Quantum intended to take over Progressive's clients for Quantum's sole benefit. (*Id*. ¶ 31.) Also, Progressive alleges that in March 2010, Quantum's contact person, Monicka Walas, falsely stated that Quantum did not sell directly to Progressive's customers, although at the time she made those statements, she was aware that Quantum had previously sold to Progressive's clients. (*Id*. ¶¶ 34, 35.) Also, Progressive contends that later that month, Walas reiterated that Quantum would not directly compete with Progressive for business despite Walas' knowledge that Quantum, through Ed Blecka, formed a new company named North Star Foods ("North Star") to directly compete with Progressive's home delivery clients. (*Id*. ¶ 38.)

Under these facts, Progressive has sufficiently described the "who, what, when, where, and how" of its fraudulent inducement claim. *See AnchorBank,* 649 F.3d at 615. More specifically, Progressive has alleged that certain Quantum agents, including Walas, knowingly made materially false statements regarding Quantum's continuing business relationship with Progressive and their pricing structure during the time period from 2009 through 2010. These

9

statements include Walas telling Progressive that Quantum would not directly compete with Progressive for business, when she knew that Blecka had formed North Star Foods to directly compete with Progressive's concerning its home delivery clients. Progressive also alleges that it relied upon Quantum's representations to its detriment and continued to cultivate the home delivery business for both Quantum's and Progressive's benefit without knowing that Quantum was attempting to take over the parties' business for its sole benefit and coerce Progressive to cease its business with Quantum.

Quantum, on the other hand, argues that these allegedly fraudulent misrepresentations pertain to future facts, and thus Progressive cannot rely on these statements to establish fraudulent inducement. To clarify, "under Illinois law, statements regarding future events or circumstances are not a basis for fraud. Such statements are regarded as mere expressions of opinion or mere promises or conjectures upon which the other party has no right to rely." *Triumph Packaging Group v. Ward*, ___ F.Supp.2d ___, 2012 WL 2815594, at *13 (N.D. Ill. July 10, 2012) (citation omitted). Under Illinois law, however, it "is well established that a promise to perform an act accompanied by an intention not to perform is a misrepresentation upon which fraud can be based 'if the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud.'" *Hassan v. Yusuf,* 408 Ill.App.3d 327, 349, 944 N.E.2d 895, 348 Ill.Dec. 654 (1st Dist. 2011) (citation omitted). Here, Progressive's allegations reflect present events underlying the alleged fraudulent inducement, as well as future conduct in the context of a scheme to defraud. Under these circumstances, Progressive has sufficiently alleged its fraudulent inducement claim. *See HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 168, 137 Ill.Dec. 19, 545 N.E.2d 672 (Ill. 1989).

**III.** **Unjust Enrichment**

In addition, Progressive has sufficiently alleged its unjust enrichment counterclaim – alleged in the alternative – under the federal notice pleading standards. "In Illinois, 'to state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Clearly v. Philip Morris Inc.,* 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 160, 137 Ill.Dec. 19, 545 N.E.2d 672, 679 (Ill. 1989)).

In its Counterclaim, Progressive maintains that over the course of their 15-year relationship, Quantum's home delivery business grew exponentially as a result of Progressive's efforts for the parties' mutual benefit. (Countercl. ¶ 84.) Furthermore, Progressive alleges that Quantum was unjustly enriched by the profits and future business interests it obtained as a result of Quantum's and its agent's wrongful conduct when making false representations to Progressive and its clients regarding the costs of Progressive's goods. (*Id*. ¶ 85.) Progressive also alleges that it suffered damages when it lost its present profits and future business interests with its clients. (*Id*. ¶ 86.) Thus, Progressive maintains that – absent a finding in Progressive's favor on its tortious interference and fraud claims – it would be unjust to allow Quantum to retain the additional profits it has received by directly marketing to Progressive's clients. (*Id*. ¶ 87.) Based on these allegations, Progressive has sufficiently alleged that Quantum unjustly retained Progressive's profits and future business interests as a result of its wrongful conduct and false representations. *Twombly,* 550 U.S. at 555 ("factual allegations must be enough to raise a right to relief above the speculative level."). In other words, Progressive's allegations, accepted as true, "state a claim to relief that is plausible on its face." *Id.* at 570.

11

**IV.     Punitive Damages and Attorney's Fees**

Quantum also seeks dismissal of Progressive's request for attorney's fees and punitive damages arguing that Progressive has no legal basis to any such relief. Under Illinois law, "[p]unitive damages may be awarded when the defendant's tortious conduct evinces a high degree of moral culpability, that is, when the tort is 'committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.'" *Slovinski v. Elliot,* 237 Ill.2d 51, 58, 340 Ill.Dec. 210, 927 N.E.2d 1221 (Ill. 2010) (citation omitted). Punitive damages are available for common law fraud claims. *See Keeling v. Esurance Ins. Co.,* 660 F.3d 273, 275 (7th Cir. 2011).

In its motion to dismiss, Quantum seeks to strike Progressive's request for punitive damages arguing that Progressive failed to specifically allege that Quantum's conduct was outrageous, evil or reckless. Quantum's argument is based on a hyper-technical reading of the federal notice pleading standards where the Court views all well-pleaded factual allegations as true and makes all reasonable inferences from the allegations in the plaintiff's favor. *See AnchorBank,* 649 F.3d at 614. Viewing Progressive's fraudulent inducement allegations and all reasonable inferences in Progressive's favor, the Court declines to strike Progressive's request for punitive damages at this juncture.

On a final note, Quantum maintains that the Court should strike Progressive's request for attorney's fees. In response, Progressive does not address this argument, and thus the Court grants Quantum's request as unopposed. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in legal brief amounts to abandonment of claims).

**CONCLUSION**

For the these reasons, the Court denies Quantum's motion to dismiss Progressive's Counterclaim and grants Quantum's motion to strike Progressive's request for attorney's fees.

**Date:** November 14, 2012

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**